Good morning. Sarah Gorman of Federal Defenders on behalf of Mr. Avila Herrera. The government breached Mr. Avila Herrera's plea agreement by filing a sentencing summary chart that recommended a different guideline calculation than the plea agreement. There wasn't any agreement about criminal history category, was there? Well, Your Honor, there was not. This is not regarding the criminal history category, however. This is regarding the guideline calculation, which in the plea agreement, there was an agreement that the parties would request that the court analyze the guideline recommendation as a base offense level 8, a plus 4 enhancement, a minus 2, and a minus 2. However, the government filed an amended sentencing summary chart that asked for a guideline calculation of 8 plus 16 minus 3 minus 2. According to the local rule, Rule 32.1A9, a sentencing summary chart summarizes counsel's requested analysis of the guideline application in the case. The plea agreement bound the government to ask for a specific guideline calculation. Paragraph 5, ER 5 of the plea agreement, the plea agreement read that although the parties understand that the guidelines are only advisory and just one of the factors that the court will consider, the parties agree that the sentencing guidelines are to be computed as follows, which was the 8 plus 4 minus 2 minus 2. The plea agreement obligated the government to make this specific recommendation to the sentencing court, and not making that recommendation, the government breached the plea agreement. Mr. Avila Herrera is entitled to a specific performance and asks that this court rename the case for resentencing in front of a different judge. Now, do you really want a different judge? Let's assume for a moment that, and I'm going to jump ahead because we'll hear from the government on this, but assume for the moment that the criminal history problem is going to require a recalculation and a resentencing. Do you really want a different judge? Your Honor, I I understand the case law that suggests that if in fact the government breached the plea agreement, that's the root. The problem, the practical problem we have here is that once the trial judge or the district judge reads the pre-sentencing report, the agreed upon recommendation is kind of a dead letter. And that's pretty apparent from the beginning because the judge is conscious of, gee, this judge, I just got out after being sentenced to, I'm not sure, was it 46 months, the sentence he got out for? Yes. And what's the chance he's going to sentence pursuant to that recommendation? I mean, the recommendation is kind of not very persuasive at that point. And so everybody's trying to figure out where do we go next, which may explain why this sentencing was kind of elongated. In this case, the district judge recognized there was a problem and may well have cut your client some slack recognizing the problem. Just start over with a fresh sheet of paper since no judge is going to pay any attention to that recommendation. Do you really think the calculation is going to get better? Well, Your Honor, I don't know whether the calculation is going to get better. And clearly it is the district court judges within his realm to definitely have to sentence taking that plus 16 enhancement into account. But the case law is clear that it does go to a different judge because of the recommendation that the government made that was the breach that was not in line with the agreement. This court has actually said in United States v. Mondragon that it's of no consequence whether the district judge did not consider the prosecutor's statement as a comment on the sentence or a recommendation with respect to the sentencing or that it had no effect on him. Which really explains why I'm putting the question to you. Is your client going to be better served by going back with a clean sheet of paper and letting a different judge make a brand new calculation? I mean, even getting what you want, what do you think that calculation is going to result in? My calculation suggests a range higher than the sentence that was imposed. It may, in fact, Your Honor. And that's a good thing for your client? Well, the good thing for my client is that he'd be in front of a judge who was not influenced already by the comments and by the breach of the government in this case. And that's why the case law does go in the way that it does, which is recommending that there be specific performance in front of a different judge. I've got to say that will be limited consolation to your client if your client gets a sentence within the new sentencing range. That's your call or your client's call. Well, Your Honor, and of course it is up to the district court judge. Essentially, he does not have to follow the recommendation, but with the government's breach. Well, is there any serious chance that he's going to be sentenced consistent with that recommendation? I mean, really. Your Honor, there were arguments made at the district court level that even if the court did not follow the recommendation of 15 months and looked at the guideline range as the court was calculating it, which was incorrect given the incorrect calculation of the criminal history, that Mr. Aviladera should still be sentenced to what was the low end of that guideline range, which was 15 months, and that argument was made. He's just come out from serving, what, 46 months? That's correct. For the same violation? Is any judge going to say, okay, so I'm going to give him a sentence one-third his law and he'll surely pay attention to that? I mean. Well, Your Honor, the sentence in the previous case in 2006 in Orange County, that sentence was imposed pre-United States v. Amesco-Vasquez, which is the case that was cited at the district court level, showing the court why such a sentence would be appropriate in Mr. Aviladera's case. He did have. He wasn't exactly deterred by that prior sentence from coming back. I mean, I did not write down how soon it was, but it surely was not long, and he's back. So he wasn't deterred in the slightest by a sentence of 46 months. So let's try 15 months. That's sure to work. I mean, the definition of insanity is doing the same thing over and over again and expecting the result to be different. In this case, let's give him a sentence one-third as long, and that's going to deter him? Really? Well, Your Honor, again, the United States v. Amesco-Vasquez was not decided at that point. The court, in addition to deterrence. No, it's irrelevant to the question posed. I mean, what district judge is going to give a sentence one-third as long and think it's going to be a good sentence? Well, Your Honor, what the ultimate sentence will be is up to the district court judge. But the issue in this case is the government's breach of the plea agreement and how that breach. And you don't care if it results in a sentence even longer than this one? Oh, of course I care for my client whether it results in the same. And you don't think that's a serious prospect? It may, in fact, be. But what Mr. Avilara Herrera is requesting is that there be an opportunity for the government and himself to come to the court with the joint recommendation, with the united front that this court has spoken to before. And your client thinks it's a serious prospect he's going to be sentenced pursuant to that recommendation to 15 months? He certainly is entitled to both the government and himself making this joint recommendation to the court. And that's what he bargained for when he originally signed the agreement on August 7th, and that's what he did not receive. Maybe Santa Claus will show up. Well, you know, just look at his probation report. It doesn't look very good, does it? I mean, he's got, oh, about six, seven inches of AKA. And then you look at the other. He's got six different dates of birth, from 53 all the way to 76. And it looks like he's got a couple of different DMV numbers and three social security numbers. And, Your Honor, the pre-sentence report is certainly what a district court can take into consideration. I would just like to... Who sentenced him on this? Who was the district judge? Judge Sabra. Sabra. And, Your Honor, I do notice that I only have about a minute and 20 seconds remaining. I would like to reserve time for rebuttal, but if the court does have further questions, I'd gladly answer. Well, we're trying to educate you, but apparently you're uneducated. Can I say something else? You just want to reserve time? Well, Your Honor, I think I would just reserve time, but I would also just indicate to the court that the criminal history miscalculation is in and of itself an error that was not calculated correctly. And with that, I would reserve for rebuttal. Okay. Good morning. Kyle Hoffman, United States. I'd like to pick up on a point that was raised in the discussion with counsel, and that's the point that from the first hearing to the last hearing, the district court judge was, in fact, Sabra, was fixed on the fact that the defendant had received a 46-month sentence for precisely the same conduct in 2006, and he could not in conscience follow a plea agreement for less than 46 months. That was at E.R. 35, the first hearing. And at the last hearing, the last sentence for precisely the same conduct in 2006 resulted in a 46-month sentence, so it would not make any sense to sentence at less than 46 months. So we start with kind of a fixed proposition that this district court judge, once he found out that there was a plus 16 involved, was just not going to sentence below 46 months. Now, that has ramifications for a couple of different issues. Let me get a premise dealt with first, and that is, is there currently a dispute with regard to whether the criminal history category calculation was correct? There is not. I actually, contrary to our brief, I agree that the plus 16 offense should not have scored. I mean, we've now got the additional. I mean, we haven't ruled on the request for judicial notice. There's been no opposition. We're going to wind up granting it if there's no opposition. And in the light of the materials, it appears pretty clear that everyone was operating under a misapprehension or misunderstanding as to what the actual sentence was. So I agree and disagree only a little bit. Skip the background. The bottom line result is that we know we've got a problem with the criminal history calculation. And actually, it's apparent from the record as it stood, even without the judicial notice. It just got lost in the distraction of other things. So I'm not trying to find any fault. But because of that and because of our case law that says that the guideline range has to be calculated correctly, we're destined for resentencing. Can you have any? And I'm putting this one piece at a time because I want to give you an opportunity to speak to that. But our recent case law pretty clearly seems to say we don't care if the judge says it wouldn't have made a difference. We're going to act like it makes a difference. Well, can I respond to that? A couple of points. I know there was a recent case where the government is trying to pursue an en banc argument about this issue. If the district court judge says under 3553 I come to this result pretty much no matter what, but there's a miscalculation of the sentencing guidelines, we're pursuing. I understand that the rule now is that you have to calculate it right regardless. But we're pursuing that. So we don't want to give that up. The second thing I would say is that counsel relies on the Hammonds case, which she suggests pretty much says it's a per se rule. If you've got the criminal history category wrong, it goes back. I actually disagree with that reading of the Hammonds case because in Hammonds, the district court judge didn't do a criminal history score at all, didn't do a guideline calculation at all, didn't do an analysis under 3553 or 3583, the supervised release statute, and according to this court's opinion, essentially gave no reasoning, no basis for why it came to the particular sentence it came to. And that's why I started with the quotations from the court. I'm not trying to speak from Hammonds. Frankly, I didn't go back because after him you know it's Camarena, which may well, I mean, it takes a while sometimes for our dust to settle. But the case law that binds us right now appears to require resentencing. And at that point, the question that's left to us is whether resentencing must be before a different judge because of the alleged violation by the government of the agreement. So, Your Honor, it puts me in something of a dilemma. And I'll say the reason why. I actually thought if it's going to go back down anyway, why not eliminate any of the arguments about breach and so on by sending it to a different judge without conceding that there was a breach? That's one possibility. I don't want to concede that there was a breach, but it may just be as a practical solution better to just send it to another judge. Well, this is unusual. I hope it's unusual. I think the criminal history fact which slipped by because of the attention on other things. Correct. And the fact that we have a recommendation that's so plainly an outlier once the actual history surfaces means that, as I've already said, I can't imagine that there's a single district judge in the Southern District that's going to wind up sentencing 15 months on this. Not likely. And so, and I know Judge Subraw, and it's not hard for me to understand how from the very beginning, okay, that's not going to happen. So what is going to happen? There is a legitimate question. I think the defendant has some basis for saying, look, the government's hands should be tied here, and how far can the government go in appearing to advocate for something else as opposed to sitting there, and I've read some strange transcripts where the government attorney answers lots of questions and winds up making a recommendation of whatever it was the original deal was. I don't think the practical effect is very great. We have case law that says, well, if you decide that's not a full-throated recommendation, then you have resentencing. Your Honor, perhaps I can make a suggestion, and that's this. I really think it's very strong that there was no breach of a plea agreement on the first two allegations. I think it should be reviewed under a clear error standard because it's kind of a fact-intensive, what happens in the district court, how do we interpret the sentencing summary charts. That's my experience, again, with the sentencing summary chart. I think it's very clear that that should be upheld, no breach of plea agreement under a clearly erroneous standard. I suggest it's kind of a practical solution. If the court wants to shift it to another judge, assuming that the third allegation amounted to a breach, I have arguments against that, but it may be just a practical solution to send it back down, assuming without deciding or something, we'll send it to a different judge. Now, of course, the defense takes the risk that the sentence will not be less but will rather be more. And I have and will continue for at least a few days to give the defendant an opportunity to think about that. You know the judges there much better than I do, but if I look at this, I'm not so sure that the risk isn't substantial that it could get worse, and that's ultimately the defendant's choice. Right. In fact, that choice was very clear. Judge Subraw said very clearly early on, I'm not going to abide by this plea agreement. Maybe both parties need to go back and huddle and see if you can come to a better resolution. And that was rejected. That's fine. That's life in litigation, but there are consequences to doing that. Perhaps there's reason to hope that another judge will give more weight to the apparent. We're all feeling our way through. The person who has the unfortunate responsibility of serving this time ultimately has to decide which path we're going to take. And I try to be responsive to the court's concerns. If the court has any other questions, I'd be happy to try to answer them. But I've given my sort of outline of where I think the case ought to go. Thank you. Your Honor, I just want to clarify that Mr. Aviladero was entitled to a joint recommendation by the government. He did not receive that. He may, in fact, be sentenced to more time for less time. We're not sure at this point. But the existence of the claimant... Well, he probably cares about that more than anything else. He does. And I don't know the answer to the question. I'm not trying to tell you what the answer is. But I think it's a serious question. I don't know how recently you've explored it with him or if you need more time to explore it with him. But the prospect of a heavier sentence clearly is there, so... It is clearly there. But the issue Mr. Aviladero is raising is that he's not raising that the plus 16 was the breach. The plus 16 is there. The government brought it to the court's attention. Defense counsel brought it to the court's attention. What the breach was was the extraneous comments, the submission of the sentencing summary chart, that was a recommendation for a higher sentence. And because of that, he does ask for resentencing in front of a different judge and for specific performance. And just briefly, the government makes the contention that this is reviewed under a clear error standard. It is a de novo standard because the facts are not in dispute. It's merely a question of applying the law of breach to these facts. There's no question that there was a sentencing summary chart filed. There's no question that the law... Well, there was a factual finding by the district court that there was not a breach. That finding was applying the facts, which were not in dispute, to the law of breach. And that's what this court has said in United States v. Mondragon, that when there's no factual dispute, and there is not in this case, the acts that took place that were the breach, there's no question that they happened. It's merely a matter of applying the law of breach to these facts, which is what the district court judge did and what this court must do. The facts aren't disputed on one level, but in fact, I'm not sitting in the courtroom. I'm not party to the dialogue. I can read a transcript, but the district judge knows much better than I do whether the government's comments were responding to his inquiry or being offered up as a recommendation. So I don't know that the indifference that the standard of view makes any difference here either, but I'm not so sure that it would be called de novo. I think in line with this court's case is that the tone or the comments made, they are what they are, and the application of the law to those comments is what the court does, not necessarily determining how they were made, but the fact that they were made. And with that, I would submit and ask the court to remand for resentencing in front of a different judge where Mr. Aguilar may receive specific performance. Thank you. Thank you very much. This matter will stand submitted. And now we come to number seven.
judges: Holland, Pregerson, Clifton